UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F., a minor, by her Guardian ad litem CHERISE ABEL-IRBY,<br><br>Plaintiff,<br><br>v.<br><br>NEW HAVEN UNIFIED SCHOOL DISTRICT, et al.,<br><br>Defendants. | Case No. 13-cv-03808-SI<br><br>**ORDER RE MOTION TO DISMISS COUNTS ONE AND TWO OF PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Now before the Court is defendants' motion to dismiss Counts One and Two of plaintiff's first amended complaint ("FAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). This matter is scheduled for hearing on November 21, 2014. Pursuant to Civil Local Rule 7-1(b), the Court determines that this motion is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss Counts One and Two of the FAC with leave to amend.

**BACKGROUND**

The following background facts are taken from the allegations in the FAC. This case arises from problems between plaintiff J.F., a minor student, and defendants, her school district and certain staff members of her former high school. Plaintiff appeals the administrative decision of the California State Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.*

## I. Statutory Scheme

The IDEA provides that when a special education student is suspended for disciplinary reasons for more than ten days, the school district must conduct a manifestation determination to decide whether the conduct at issue was a manifestation of the student's disability. 20 U.S.C. § 1415(k)(1)(E); 34 C.F.R. § 300.536(a)(1). To make this determination, members of the student's individualized education plan (IEP) team meet to review the student's educational file. 20 U.S.C. § 1415(k)(1)(E)(i); 34 C.F.R. § 300.530(e)(1). If the review team determines that (1) the conduct in question was caused by, or had a direct and substantial relationship to, the student's disability; or (2) the conduct was the direct result of the district's failure to implement the student's IEP, then the student's conduct "shall be determined to be a manifestation of the child's disability." 20 U.S.C. § 1415(k)(1)(E)(ii); *see* 34 C.F.R. § 300.530(e)(2).

If the review team determines that the student's conduct *was* a manifestation of the student's disability, then the district is required to conduct a functional behavioral assessment, implement a new or review an existing behavioral intervention plan, and return the student to the placement from which the student was removed. 20 U.S.C. § 1415(k)(1)(F); 34 C.F.R. § 300.530(f). In contrast, if the review team determines that the student's conduct was *not* a manifestation of the student's disability, then the district may apply the same disciplinary procedures that apply to children without disabilities. 20 U.S.C. § 1415(k)(1)(C); 34 C.F.R § 300.530(c).

The IDEA further provides that the parent of a student with a disability may appeal the manifestation determination by requesting an administrative due process hearing. 20 U.S.C § 1415(k)(3)(A); 34 C.F.R. § 300.532(a), (c). The administrative law judge ("ALJ") hearing the dispute may order a change in placement of the student or return the student to the placement from which she was removed. 20 U.S.C. § 1415(k)(3)(B)(ii); 34 C.F.R. § 300.532(b)(2).

## II. October 26, 2012 Incident

Plaintiff is a student qualified to receive special education services under an IEP. FAC ¶¶ 2, 4, 13. Plaintiff suffers from Attention Deficit and Hyperactivity Disorder ("ADHD"), for which

1  she takes daily medication. *Id.* ¶ 3. Plaintiff attended James Logan High School in defendant
2  New Haven Unified School District from the start of the 2012-2013 school year until her
3  suspension on October 26, 2012. *Id.* ¶¶ 1, 13; Ex. A at 3.

4  On October 26, 2012, plaintiff was involved in a physical fight on school grounds with two
5  other students. *Id.* ¶¶ 5, 24. Moments after the fight, one of the school principals, defendant
6  Abhijit Brar, encountered plaintiff yelling and upset in the hallway. *Id.* Ex. A at 6. Plaintiff tried
7  to evade defendant Brar several times, so defendant Brar approached plaintiff from behind and
8  grabbed her arm. *Id.* ¶¶ 5, 28[1]; Ex. A at 6. Plaintiff responded by kicking defendant Brar and
9  striking him in the chest. *Id.* Defendant Brar then placed plaintiff in a "full body bear hold" to
10 restrain her. *Id.* At this time, defendant Christopher Perry, a campus security technician, arrived
11 and assisted defendant Brar. *Id.* ¶ 28[2]; Ex. A at 6. After defendant Brar released plaintiff, plaintiff
12 fell to the floor and vomited. *Id.* ¶ 29. As a result of this altercation, the district suspended
13 plaintiff for multiple student code violations. *Id.* Ex. A at 8.

### III. Procedural History

#### A. Manifestation Determination

Following plaintiff's suspension from school, the district held a manifestation determination hearing on October 30, 2012. *Id.* The review team examined plaintiff's conduct in the context of another disability from which she suffered, specific learning disability ("SLD"), and determined that plaintiff's conduct was not a manifestation of her SLD. *Id.* Ex. A at 2 n.5, 8. The district subsequently convened a second manifestation determination hearing on February 19, 2013 and determined that plaintiff's conduct was not a manifestation of her ADHD. *Id.* ¶ 7; Ex. A at 9. The district held this second hearing pursuant to a January 7, 2013 settlement agreement reached after plaintiff filed a due process complaint against the district in Fall 2012. *Id.* Ex. A at 9. As part of the settlement agreement, the district agreed to conduct a "full behavioral

---

[1] The FAC contains two paragraphs labeled "28." The Court refers here to the first paragraph bearing that number.
[2] The Court refers here to the second paragraph in the FAC labeled "28."

3

evaluation" once plaintiff was in a regular school placement. Dkt. No. 106-1, Declaration of David R. Mishook ("Mishook Decl.") ¶ 2.

On March 28, 2013, plaintiff requested a due process hearing before the OAH seeking review of the district's February 2013 manifestation determination. FAC Ex. A at 1. On May 20, 2013, the ALJ affirmed the district's determination that plaintiff's conduct was not a manifestation of her disability. *Id.* Ex. A. In her expedited decision, the ALJ noted that plaintiff had no prior history of fights or angry outbursts at school before October 2012. *Id.* Ex. A at 5, 12.

### B. Expulsion Proceedings

Following the district's February 2013 manifestation determination, the matter proceeded to an expulsion hearing. Dkt. No. 91, Declaration of John Mattos ("Mattos Decl.") ¶ 8. On April 23, 2013, the district convened a panel to consider whether to expel plaintiff. *Id*. ¶ 9. The panel ultimately recommended plaintiff for expulsion. *Id.* However, on May 7, 2013, the district's Board of Education voted to reject the panel's expulsion recommendation and suspended the enforcement of the expulsion. *Id.* ¶ 10. Plaintiff was placed at Conley-Caraballo High School and advised that she could reapply for admission at James Logan High School beginning on May 10, 2013. *Id.* ¶ 10. On June 20, 2013, the district confirmed that plaintiff had been approved for readmission in the district and that her status of "suspended expulsion" had been removed. *Id.* ¶ 11. During the period of her suspension from October 26, 2012 until her enrollment at Conley-Carballo High School, the district provided education services to plaintiff through a home instructor. *Id.* ¶ 12. However, plaintiff alleges that due to her absence from school, she failed to acquire enough course credits to graduate on time, noting that she "was without instruction for months" and her current placement "allows her to recover units but it does not allow those units to be used at a four-year college." Dkt. No 99-1, Declaration of Nicole Hodge Amey ("Amey Decl.") ¶¶ 6, 7. In addition, plaintiff alleges that at her current placement, she has been "subject to school discipline" for which "she was removed from school and sent home." *Id.* ¶ 10.

4

#### C. District Court

Plaintiff filed her original complaint in this Court on August 16, 2013 seeking, *inter alia*, reversal of the ALJ's decision upholding the district's manifestation determination. Dkt. No. 1. On January 22, 2014, the Court granted in part and denied in part defendant's motion to dismiss the original complaint. Dkt. No. 40. On February 24, 2014, plaintiff filed her FAC alleging eight causes of action. Dkt. No. 43. As pertinent here, Count One is an appeal of her administrative due process hearing against the district under the IDEA and Count Two is claim for attorneys' fees under the IDEA. *Id.* On April 22, 2014, this Court granted in part and denied in part defendant's motion to dismiss Counts Three through Eight of the FAC. Dkt. No. 51.[3]

Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Counts One and Two of the FAC for lack of subject matter jurisdiction, on the ground that the claims are constitutionally and/or prudentially moot.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). "In resolving a Rule 12(b)(1) *factual* attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

---

[3] Counts Three through Eight are as follows: (3) claims for intentional and negligent infliction of emotional distress against all individual defendants; (4) a civil rights claim under 42 U.S.C. § 1983 for violation of her Fourth and Fifth Amendment rights against all individual defendants; (5) a claim under the Americans with Disabilities Act ("ADA") against all defendants; (6) a claim under section 504 of the Rehabilitation Act of 1973 against all defendants; (7) a claim under the Unruh Civil Rights Act against all defendants; and (8) a claim for assault and battery against defendants Brar, Pando, and Perry.

1    A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal
2    jurisdiction either "facially" or "factually." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039
3    (9th Cir. 2004). When the complaint is challenged for lack of subject matter jurisdiction on its
4    face, all material allegations in the complaint will be taken as true and construed in the light most
5    favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a
6    Rule 12(b)(1) motion, which mounts a factual attack on jurisdiction, "no presumption of
7    truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not
8    preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the
9    plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Pub. Co. v.*
10   *Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed.*
11   *Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## II. Mootness

Mootness relates to a federal court's subject matter jurisdiction and is properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted). The jurisdiction of federal courts depends upon the existence of a "case or controversy" under Article III of the Constitution. U.S. Const. Art. III, § 2, cl. 1; *see Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996). Article III requires the existence of a "case or controversy" through all stages of federal judicial proceedings. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Thus, a claim is moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: ". . . no justiciable controversy is presented . . .when the question sought to be adjudicated has been mooted by subsequent developments. . . ." *Flast v. Cohen*, 392 U.S. 83, 95 (1968); *see Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999) (en banc). The court "must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal." *Pub. Utils. Comm'n*, 100 F.3d at 1458 (citation omitted). The party asserting mootness bears the heavy burden of establishing that there is no effective relief that the court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (citation omitted).

1    In addition to constitutional mootness, the doctrine of prudential mootness permits a court to "dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief. . . ." *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1135 (9th Cir. 2014) (citing *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)).

A case that would otherwise be moot can avoid dismissal if it fits into one of two mootness exceptions. The first mootness exception involves cases that are "capable of repetition, yet evading review." *Pub. Utils. Comm'n*, 100 F.3d at 1459. This exception applies only in exceptional circumstances. *Id.* To fit the exception, a controversy must meet two requirements: (1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* The second mootness exception applies where petitioner would suffer "collateral legal consequences" if the actions appealed were allowed to stand. *Id.* at 1460.

## III. IDEA

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ." 20 U.S.C. § 1400(d)(1)(A).

A party aggrieved by the findings and decision of an IDEA administrative due process hearing may bring a civil action in state or federal court. § 1415(i)(2)(A). A court considering an appeal of an IDEA administrative due process hearing "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). The court may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability. § 1415(i)(3)(B)(i)(I).

7

# DISCUSSION

Defendants ask the Court to dismiss Counts One and Two of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) as constitutionally and/or prudentially moot, on the ground that the Court cannot grant any meaningful or effective relief to plaintiff. Defendant further contends that the availability of attorneys' fees does not forestall application of the mootness doctrine. Plaintiff contends that her appeal presents a live controversy and fits within two exceptions to the mootness doctrine.

## I.   Count One – Appeal of OAH Decision

Count One seeks reversal of the May 20, 2013 OAH decision upholding the district's February 2013 manifestation determination. Defendants move to dismiss Count One as constitutionally and/or prudentially moot on the ground that plaintiff cannot obtain meaningful or effective relief. Plaintiff asserts that her appeal presents a live controversy and falls under two exceptions to the mootness doctrine.

### A.   Meaningful or Effective Relief

Defendants assert that this Court cannot provide any meaningful or effective relief to plaintiff by reversing the OAH decision. The Court agrees. Reversal of the OAH decision does not in itself constitute meaningful or effective relief and the Court cannot provide, nor has plaintiff asserted a prayer for, any further relief.

Any relief available under the IDEA for reversal of an erroneous manifestation determination has long since been made available to plaintiff. Pursuant to the IDEA, if a student's conduct is deemed a manifestation of her disability, then the district must return the student to her prior placement and follow with a behavioral assessment and behavioral intervention plan. 20 U.S.C § 1415(k)(1)(F); 34 C.F.R. § 300.530(c). Here, the district invited plaintiff to reenroll at James Logan High School beginning on May 10, 2013 and confirmed that plaintiff had been approved for readmission in the district on June 20, 2013. Mattos Decl. ¶¶ 10-11. Accordingly,

plaintiff can return to her prior placement without the Court's intervention by simply accepting the district's invitation to reenroll. Furthermore, pursuant to the January 2013 settlement agreement following the first manifestation determination, the district agreed to provide "a full behavioral evaluation" once plaintiff returned to a "regular school placement."[4] Mishook Decl. at ¶ 2. As such, any relief available under the IDEA -- return to prior placement and implementation of a behavioral plan -- is already available to plaintiff. *See M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 857 (9th Cir. 2014), as amended (Oct. 1, 2014) (finding parents' claim under IDEA for reimbursement of cost of evaluation moot where district had already paid cost of evaluation in full); *Dep't of Educ., State of Hawaii v. Rodarte ex rel. Chavez*, 127 F. Supp. 2d 1103, 1112 (D. Haw. 2000) (merits of IDEA appeal rendered moot by the fact that the student had already received hearing officer's award of three months compensatory education).

In addition, obtaining a reversal of the OAH decision will have no practical effect on plaintiff's educational records. As defendants point out, plaintiff was never subject to a final order of expulsion by the district. Rather, the district's Board of Education voted to reject the expulsion recommendation and suspended the enforcement of the expulsion. Mattos Decl. ¶ 10. On June 20, 2013, the district confirmed that plaintiff's status of "suspended expulsion" had been removed from her record. *Id.* ¶ 11. Because plaintiff was never subject to a final order of expulsion and her "suspended expulsion" status was cleared from her record over a year ago, there is nothing to remove from plaintiff's record.[5]

Plaintiff contends that as a result of her absence from school, she failed to earn enough course credits to graduate on time. Plaintiff alleges that she "was without instruction for months"

---

[4] It is unclear from the redacted settlement agreement whether the promised behavioral evaluation would be conducted with respect to plaintiff's SLD or ADHD. *See* Mishook Decl. Ex A at 2.

[5] At any rate, the Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and the California Education Code prohibit disclosure of plaintiff's disciplinary records absent parental consent. *See* Cal. Edu. Code. § 49073 *et. seq*.

and her current placement "allows her to recover units but it does not allow those units to be used at a four-year college." Amey Decl. ¶¶ 6, 7. However, plaintiff fails to explain how obtaining a reversal of the OAH decision would entitle her to receive course credits as a remedy. In addition, the district tried to accommodate plaintiff's absence from school during the period of her suspension between October 2012 and her enrollment at Conley-Caraballo High School by providing educational services to plaintiff through a home instructor. Mattos Decl. ¶ 12.

Plaintiff also argues that she continues to suffer consequences from the expulsion process. Specifically, plaintiff alleges that when she attempted to buy tickets for her junior prom, she was informed that she could not attend because she had been expelled and was forced to obtain special permission to attend. Amey Decl. ¶¶ 4, 5. However, it is unsurprising that plaintiff needed special permission to attend the James Logan High School junior prom, given that plaintiff no longer attended that school at the time she attempted to purchase the prom tickets. FAC ¶¶ 1, 13; Ex. A at 3. Furthermore, in deposition, plaintiff admitted that she was able to participate in activities at her former high school after the district's Board rejected the expulsion recommendation. Mishook Decl. Ex. B.

In addition, plaintiff asserts that "[i]f JF prevails on her due process appeal, JF can ensure a program is designed to meet her needs and obtain appropriate program designs and services. . . ." Pl.'s Opp'n at 2. She further asserts that "[t]he need to determine whether student's conduct was a manifestation of her disability as testified to by student's independent assessor remains." *Id.* at 1. However, the OAH proceeding was limited to the narrow issue of whether plaintiff's conduct was a manifestation of her disability and whether the district properly implemented her IEP. FAC Ex. A at 2. Reversing the OAH decision will not "ensure a program is designed to meet [plaintiff's] needs" because the ALJ did not examine the adequacy of the IEP or whether it met plaintiff's needs. *Id.* at 16-17, 21 n.36. Rather, the ALJ examined whether the district complied with plaintiff's existing IEP. *Id.* Furthermore, to the extent plaintiff now seeks a behavioral

10

assessment, the district has already agreed to provide one pursuant to the January 2013 settlement agreement.  Mishook Decl. ¶ 2.

Plaintiff's remaining theory of relief is unavailing.  Plaintiff asserts that "a controversy exists regarding the weight of evidence" an ALJ may give to an expert "who has never met or assessed the student. . . ."  Pl.'s Opp'n at 2.  However, a ruling on this issue would constitute an advisory opinion because, as discussed above, the Court cannot grant any meaningful or effective relief to plaintiff.  Accordingly, any relief provided by the IDEA is already available to plaintiff and the Court cannot grant any further meaningful or effective relief.

### B.     Collateral Legal Consequences

Plaintiff asserts that her claim falls under the "collateral legal consequences" exception to the mootness doctrine.  This exception applies where a petitioner would suffer collateral legal consequences if the actions being appealed were allowed to stand.  *Pub. Utils. Comm'n,* 100 F.3d at 1460.

Plaintiff argues that dismissing her due process appeal as moot would allow the district to present the OAH decision to a jury in order to rebut plaintiff's remaining causes of action.  However, plaintiff cites no authority for the proposition that the potential admission of an administrative decision at trial constitutes a collateral legal consequence.  Under plaintiff's theory, a party would be required to litigate a moot claim simply to help the plaintiff better pursue her other claims.  *See M.M.*, 767 F.3d at 857-58 (rejecting argument that parents would be "tainted by the ALJ's erroneous finding" because "the mere existence of an adverse decision does not revive a moot claim, lest the mootness doctrine would become meaningless."); *San Diego Cnty. Office of Educ. v. Pollock*, No. 13-CV-1647-BEN BLM, 2014 WL 2860279, at *11 (S.D. Cal. June 20, 2014) (refusing to extend application of "narrow" collateral legal consequences exception to moot IDEA appeal where outcome of appeal would allegedly affect claims in separate action because doing so would "force an uninterested party to litigate simply to help the plaintiff better pursue separate cases").  Indeed, plaintiff's interpretation would be an end-run around mootness doctrine,

1    given that an otherwise moot claim would survive any time a disputed administrative decision
2    could be used later at trial. At any rate, if defendants attempt to admit the OAH decision at trial,
3    plaintiff may direct her arguments to the trier of fact, whose duty it is to assess the credibility of
4    such evidence.[6]

Accordingly, plaintiff's appeal presents no collateral legal consequences that justify application of this narrow exception to mootness.

### C.    Capable of Repetition, Yet Evading Review

Plaintiff contends that her appeal falls under the "capable of repetition, yet evading review" exception to the mootness doctrine. *Honig v. Doe*, 484 U.S. 305, 318 (1988). A case otherwise moot will still be heard if it presents an issue that is capable of repetition while evading review. *Id.* In order to fit within this exception, a controversy must meet two requirements: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Pub. Utilities Comm'n*, 100 F.3d at 1459 (citation omitted).

As to the first requirement, plaintiff relies on California Education Code § 48917(a) to argue that the duration of the suspended expulsion was too short to be fully litigated. California Education Code § 48917(a) provides that the district may only suspend the enforcement of the expulsion order for a maximum of one year. Cal. Edu. Code. § 48917(a). According to plaintiff, "[t]here can be no doubt that a one-year suspended expulsion mandated under California law is, by its nature, too short in duration to be fully litigated prior to its expiration." Pl.'s Opp'n at 3.

In reviewing the applicability of this mootness exception to an IDEA appeal, the Ninth Circuit found that "we have jurisdiction over this appeal because '[j]udicial review invariably takes more than nine months to complete, not to mention the time consumed during the preceding state administrative hearings. [ ] Therefore, because the dispute between the parties is capable of repetition yet evading review, this appeal is not moot.'" *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d

---

[6] Furthermore, defendants maintain that they do not intend to present the OAH decision to the jury at trial. Defs.' Reply at 4.

1467, 1471 n.4 (9th Cir. 1993); *see Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. By & Through Holland*, 14 F.3d 1398, 1403 (9th Cir. 1994) ("[m]oreover, it is likely to evade review since the nine-month school year will not provide enough time for judicial review"). In light of these holdings, it is possible that one year may not be enough time to fully litigate some IDEA disputes. However, the Court need not resolve whether plaintiff's appeal meets the first requirement of this mootness exception because plaintiff's appeal fails to satisfy the second requirement.

As to the second requirement of this mootness exception, plaintiff asserts that there is a reasonable expectation that she will "again be aggrieved by similar disciplinary issues." Pl.'s Opp'n at 3. To support this contention, plaintiff alleges that at her current placement, she has been "subject to school discipline" for which "she was removed from school and sent home." Amey Decl. ¶ 10. However, plaintiff fails to explain the circumstances giving rise to this disciplinary action, the duration of the action, or whether the action proceeded to an expulsion proceeding. Rather, the record shows that plaintiff had no prior history of fights or angry outbursts at school before October 2012. FAC Ex. A at 5, 12. Plaintiff therefore fails to allege that there is a reasonable likelihood that plaintiff will be subjected to the same action again. *M.M.*, 767 F.3d at 858 (rejecting application of "capable of repetition, yet evading review" mootness exception where conduct at issue was based on unique circumstances. Plaintiff's argument is premised on the occurrence of future hypothetical harms committed by third parties, arising from an attenuated causal chain of events. The Supreme Court has uniformly dismissed such theories as too "hypothetical" or "conjectural" to support Article III standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Because plaintiff has failed to show that she is likely to be subject to the same action in the future, her appeal does not fit the mootness exception for cases capable of repetition while evading review.

Accordingly, the Court finds that there is no meaningful or effective relief that this Court can grant to plaintiff and plaintiff's appeal does not fit within the two exceptions to the mootness doctrine. The Court therefore DISMISSES AS MOOT Count One of the FAC with leave to amend.

## II. Count II – Attorneys' Fees

Count Two of the FAC seeks prevailing party attorneys' fees under the IDEA, which provides that a court "may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Defendants move to dismiss Count Two as moot on the ground that plaintiff's appeal under the IDEA is moot and the availability of attorneys' fees does not resuscitate her otherwise moot appeal.[7]

The Court agrees that the availability of attorneys' fees does not resuscitate plaintiff's otherwise moot appeal. The Ninth Circuit has explicitly held that "the existence of an attorneys' fees claim does not resuscitate an otherwise moot controversy." *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996). Similarly, in *Rodarte*, the court determined that the question of attorneys' fees did not create collateral legal consequences necessary to avoid mootness. 127 F. Supp. 2d at 1114 (citing *S-1 v. Sprangler*, 832 F.2d 294, 297 n.1 (4th Cir. 1987) (finding rule that averted mootness based on assertions of attorneys' fees "would largely nullify the mootness doctrine with respect to cases brought under the myriad federal statutes that authorize fee awards"). Similarly, here, the availability of attorneys' fees under the IDEA does not resuscitate plaintiff's otherwise moot appeal. *See M.M.*, 767 F.3d at 858; *Marcus I. ex rel. Karen I. v. Dep't of Educ.*, 434 F. App'x 600, 602 (9th Cir. 2011) ("[if the student] were to succeed on appeal, he could be entitled to attorney's fees, but 'a claim for attorney's fees does not preserve a case which otherwise has become moot on appeal.'") (citation omitted); *Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.*, 249 F. App'x 583, 587 (9th Cir. 2007) ("[t]hat the attorney's fees issue was still outstanding is insufficient to keep the district court from finding [the student's] claims moot).

Accordingly, the Court DISMISSES AS MOOT Count Two of the FAC with leave to amend.

---

[7] Plaintiff does not address this issue in her Opposition.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss Counts One and Two of the FAC with leave to amend. This Order resolves Docket Nos. 90 and 100.

**IT IS SO ORDERED**.

Dated: November 19, 2014

_____
SUSAN ILLSTON
United States District Judge